UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
RODNEY POSTELL,

             Petitioner,

v.

MARK BRADT, Superintendent of Elmira
Correctional Facility,

             Respondent.
-------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 11/13/13

**OPINION AND ORDER**
09-cv-4853 (ER)

Ramos, D.J.:

      Rodney Postell (the "Petitioner"), an incarcerated *pro se* litigant, commenced the instant proceeding by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on May 22, 2009.  Doc. 1.  On October 5, 2009, the case was referred to the Honorable Lisa Margaret Smith, United States Magistrate Judge, by the then-presiding Judge Kenneth M. Karas.[1]  Doc. 3.  On February 14, 2012, Petitioner submitted a letter motion requesting leave to amend the Petition to include allegations regarding his trial counsel's alleged "material conflict of interest."  Doc. 15.  On February 29, 2012, Judge Smith issued an Order denying Petitioner's motion to amend (the "February Order").  Doc. 16.  Thereafter, on April 3, 2012, Petitioner filed objections to Judge Smith's Order, Doc. 21, and on April 10, 2013, this Court affirmed Judge Smith's Order denying Petitioner leave to amend (the "April Order"), Doc. 24.  Presently before the Court is Petitioner's motion for reconsideration of the April Order pursuant to Fed. R. Civ. P. 60(b).  Doc. 25.  For the reasons set forth below, Petitioner's motion is DENIED.

      The parties' familiarity with the facts and procedural history of this case is presumed.

---

[1] The case was reassigned to this Court on January 6, 2012.  Doc. 11.

I.  **Legal Standard**

Rule 60(b) of the Federal Rules of Civil Procedure and Rule 6.3 of the Local Civil Rules for this District provide for reconsideration or reargument of a court's order on a motion only where the court has overlooked controlling decisions or factual matters that were "put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 500, 501 (S.D.N.Y. 2008) (quoting *Greenwald v. Orb Commc'ns & Mktg., Inc.*, No. 00 Civ. 1939 (LTS) (HBP), 2003 WL 660844, at *1 (S.D.N.Y. Feb. 27, 2003)); *accord Fernandez v. Wells Fargo Bank, N.A.*, Nos. 12 Civ. 7193 (PKC), 12 Civ. 7194 (PKC), 2013 WL 5912158, at *1 (S.D.N.Y. Nov. 1, 2013); *see also* Fed R. Civ. P. 60(b); Local R. 6.3. The Second Circuit has instructed that Rule 60(b) is "extraordinary judicial relief" and can be granted "only upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F .2d 58, 61 (2d Cir. 1986). "Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). "Where the movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion or attempts to advance new facts, the motion for reconsideration must be denied." *Mikol*, 554 F. Supp. 2d at 500 (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

A motion for reconsideration is not a substitute for appeal, *Boart Longyear Ltd. v. Alliance Indus., Inc.*, 869 F. Supp. 2d 407, 418 (S.D.N.Y. 2012), nor is it a vehicle for a party

dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion. *Parrish*, 253 F. Supp. 2d at 715.

Whether to grant or deny a motion for reconsideration is within the sound discretion of the district court. *Premium Sports Inc. v. Connell*, No. 10 Civ. 3753 (KBF), 2012 WL 2878085, at *1 (S.D.N.Y. Jul. 11, 2012) (citing *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)). Under the strict standard applied by courts in this Circuit, "reconsideration will generally be denied." *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d at 614 (internal quotation marks and citation omitted).

## II.  Petitioner's Motion

In the April Order, this Court denied Petitioner's objection that Judge Smith failed to properly apply the holding in *Beatty v. United States*, 142 F. Supp. 2d 454 (S.D.N.Y. 2001), regarding the trial court's obligation to inquire into a defense counsel's potential conflict of interest of which the court is aware. April Order at 5 n.4. The Court held that there was no factual basis for Petitioner's objection, as Petitioner's letter motion to amend clearly states, "[t]he record below does not reveal whether the court or respondent knew of trial counsel's problem." *Id.* (quoting Mot. to Amend at 2). In his motion for reconsideration, Petitioner now argues that "the trial court and the respondent were in fact aware of trial counsels [sic] conflict, and simply chose to ignore it," Declaration of Rodney Postell ("Postell Decl.") (Doc. 26) ¶ 3, and requests that this Court hold an evidentiary hearing to determine whether the trial court was aware of trial counsel's potential conflict of interest, *id.* ¶¶ 27, 30.[2] Additionally, with respect to

---

[2] Petitioner's letter motion to amend was prepared by his prior counsel, Michael T. Mullen, Esq. Doc. 15. Subsequent to Judge Smith's February Order denying the motion to amend, Petitioner filed a *Pro Se* Notice of Appearance with the Court. Doc. 18. The objections to the February Order, as well as the instant motion for reconsideration, were filed by Petitioner *pro se*. Although the motion to amend, prepared by Petitioner's former counsel, admits that the record below does *not* indicate whether the court was aware of trial counsel's potential

3

Judge Smith's holding that Petitioner's counsel, Donald Roth, did not have an actual conflict of interest because the agency investigating Roth was not the same as the agency prosecuting Petitioner, February Order at 7, Petitioner contends that it was "the intricacies of the particular *charges* [Roth] was prosecuted for," rather than the prosecuting agency, that caused the actual conflict of interest. Reply Mem. L. (Doc. 30) 10 (emphasis added). Specifically, Petitioner contends that the investigation of Roth for witness tampering and the arrest of Roth's private investigator, David St. John, which occurred contemporaneously with Petitioner's trial, caused Roth to labor under an actual conflict of interest "when the time came for him to put witnesses on the stand" because "[h]e knew that his charges of witness tampering would cast suspicion upon any witness that he put on the stand" and, accordingly, "the safest possible course of action for defense counsel was to either lose th[e] case, or win it without the use of any of the testimony procured by his investigator." *Id.* at 10, 14, 16.

The Court notes that although Petitioner's submissions make clear that he was aware of the investigation of Roth prior to the commencement of trial—and well before the filing of the original Petition—Petitioner failed to include allegations regarding his trial counsel's alleged conflict of interest in the original Petition. *See, e.g.*, Postell Decl., Ex. A (2006 attorney affidavit regarding trial counsel's "prejudicial conflict of interest"); Reply Mem. L. 8 (indicating that Petitioner learned of his attorney's situation prior to the commencement of trial). Moreover, Petitioner failed to put forth the arguments presently before the Court in the motion to amend or the objections to Judge Smith's Order. Accordingly, the Court need not consider the factual allegations and proposed legal theories raised for the first time on Petitioner's motion for

---

conflict, Mot. to Amend (Doc. 15) at 2, Petitioner now contends that "there is ample evidence to lead this Court to believe that [the] trial court as well as respondent was [sic] aware of [trial counsel's potential conflict]." Postell Decl. ¶ 30.

reconsideration. *Johnson v. Killian*, No. 07 Civ. 6641 (NRB), 2009 WL 1787724, at *1 (S.D.N.Y. June 23, 2009) ("[I]t is not appropriate to use a motion for reconsideration as a vehicle to advance new theories a party failed to articulate in arguing the underlying motion."). Even assuming Petitioner's arguments were timely raised, however, the Court rejects Petitioner's arguments for the reasons set forth below.

### a. Trial Counsel's Alleged Actual Conflict of Interest

In his objections to the February Order, Petitioner argued that for an actual conflict of interest to exist, a defense attorney need not technically be under investigation by the same agency as the one prosecuting his client, but rather, the attorney need only "believe he might be being investigated by the same agency as was prosecuting his client." Pet.'s Objections (Doc. 21) ¶ 60. In his motion for reconsideration, Petitioner argues, for the first time, that it is the *crime* for which his trial counsel was being investigated—and not the office actually conducting the investigation—that caused an actual conflict of interest in his case. Reply Mem. L. 10. Petitioner's new legal theory does not change the Court's determination that Judge Smith properly interpreted and applied controlling Supreme Court and Second Circuit precedent in holding that Petitioner failed to allege that his trial counsel had an actual conflict of interest.

"A defendant's Sixth Amendment right to counsel includes a right to conflict-free representation." *Armienti v. United States*, 234 F.3d 820, 823 (2d. Cir. 2000) (quoting *United States v. Rogers,* 209 F.3d 139, 143 (2d Cir.2000)). An actual conflict of interest between lawyer and client exists "when, during the course of the representation, the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'" *Id.* at 824 (internal quotation marks and citation omitted). When counsel is burdened by an actual conflict of interest that adversely affects his performance, prejudice is presumed. *Id.*

It is well-settled in this Circuit that an actual conflict of interest exists when an attorney engages in wrongful conduct similar or related to the charge for which his client is on trial. *United States v. Fulton*, 5 F.3d 605, 609-10 (2d Cir. 1993) ("[W]hen an attorney is accused of crimes similar or related to those of his client, an actual conflict exists because the potential for diminished effectiveness in representation is so great.") (quoting *Mannhalt v. Reed*, 847 F.2d 576, 581 (9th Cir. 1988) (internal quotation marks omitted))). Additionally, the Second Circuit has held that when a defendant and his lawyer are simultaneously prosecuted by the same office, "[t]he interests of lawyer and client may . . . diverge[] with respect to their dealings with that office," which may "present a plausible claim that his lawyer had an actual conflict of interest." *Armienti*, 234 F.3d at 824-25 ("A lawyer in these circumstance[s], while dealing on behalf of his client with the office that is prosecuting him personally may, consciously or otherwise, seek the goodwill of the office for his own benefit. A lawyer's attempt to seek the goodwill of the prosecutor may not always be in the best interest of the lawyer's client.").

Here, Petitioner has failed to allege facts from which the inference can be drawn that his trial counsel was burdened by an actual conflict of interest as a result of his being investigated. First, whereas Petitioner was prosecuted by the Westchester County District Attorney's Office, his trial counsel was investigated, and ultimately prosecuted, by the United States Attorney's Office for the Southern District of New York.[3] February Order at 7. As such, Roth had no reason to curry favor with the Westchester District Attorney's Office during the pendency of Petitioner's case, as that office was not investigating Roth. Second, the charges against

---

[3] Petitioner's new allegation that the United States Attorney's Office was assisted by the Newburgh Police Department in its investigation of Roth does not change the plain fact that Petitioner and Roth were not investigated and/or prosecuted by the same agency. Postell Decl. ¶ 29. The Court notes, moreover, that the Petition expressly states that the Greenburgh Police Department—and not the Newburgh Police Department—investigated the incident for which Petitioner was tried and ultimately convicted.

6

Petitioner—attempted murder, criminal possession and use of a firearm, assault, and reckless endangerment—were entirely distinct from and unrelated to the witness tampering and obstruction of justice charges that Roth was being investigated for. Although courts have found that an actual conflict of interest may exist where a lawyer faces possible criminal charges or significant disciplinary consequences as a result of the lawyer's questionable behavior *related to* his representation of the defendant, *United States v. Levy*, 25 F.3d 146, 156 (2d Cir. 1994) (citing cases), that is not the case here, where Petitioner does not allege that Roth's "questionable behavior" related to his representation of *Petitioner*. See Reply Mem. L. 14-15 (arguing that the reason Roth did not call certain witnesses was "[n]ot necessarily because their testimony was untrue")[4]; *cf. Levy*, 25 F.3d at 149, 156-57 (holding that actual conflict existed where attorney was alleged to have assisted client's co-defendant in fleeing the United States); *United States v. Greig*, 967 F.2d 1018, 1020, 1022-23 (5th Cir. 1992) (where defense attorney contacted client's co-defendant and advised him not to plead guilty and to get another lawyer, holding that actual conflict of interest existed between attorney and defendant in light of the fact that attorney faced severe disciplinary measures and/or criminal charges as a result of his improper contact with co-defendant); *Gov't of Virgin Islands v. Zepp*, 748 F.2d 125, 128, 136 (3d Cir. 1984) (holding that actual conflict existed where defense counsel was potentially involved in the destruction of

---

[4] Although Petitioner submitted to the Court an attorney affidavit from a prior proceeding which states that "[i]t is not known whether statements obtained by St. John in Mr. Postell's case were false," Postell Decl., Ex. A ¶ 12, Petitioner fails to include any specific factual allegations from which the inference can be drawn that Roth suborned perjury in Petitioner's case. Petitioner's allegation that Roth did not call "multiple witnesses with evidence plainly favorable to the defense" may serve as the basis for Petitioner's ineffective assistance of counsel claim, *id.*, but it does not necessarily suggest that Roth's reason for not calling those witnesses was because of the United States Attorney's ongoing investigation of him. See Reply Mem. L., Ex. A at 2 n.7 ("It is not known why [Petitioner's] counsel declined to call either witness on behalf of [Petitioner]."); *see also United States v. Aiello*, 900 F.2d 528, 532 (2d Cir. 1990) (after finding that no actual conflict of interest existed, noting that petitioner's "claim must now be considered under the standards applicable to any other criminal defendant who seeks collateral relief against an otherwise proper conviction" and analyzing allegations of defense attorney's inadequacies under the *Strickland* standard for ineffective assistance of counsel claims).

evidence in defendant's case and where defense counsel was a witness for the prosecution); *United States v. White*, 706 F.2d 506, 507-09 (5th Cir. 1983) (actual conflict existed where defense attorneys were under investigation by a federal grand jury regarding their participation in the escape of the defendant from prison).

Indeed, the Second Circuit has directly refuted Petitioner's argument, and has found that an ongoing investigation of an attorney for witness tampering and obstruction of justice in an unrelated matter does not create an actual conflict of interest where the charges against the client are "totally unrelated" to the attorney's "purported crimes." *United States v. Aiello*, 900 F.2d 528, 530, 531-32 (2d Cir. 1990) (where lawyer was being investigated by different office for obstruction of justice and subornation of perjury "before and during the time of the proceedings against [defendant]," holding that no actual conflict of interest existed because the lawyer's "purported crimes were totally unrelated to the . . . crimes for which [defendant] was being tried"); *see also United States v. Pizzonia*, 415 F. Supp. 2d 168, 183-84 (E.D.N.Y. 2006) (holding that investigation into "defense counsel's alleged obstruction of justice and witness tampering in another criminal prosecution" does not "bear[] a strong connection to the charges at issue in this trial—murder, loan-sharking and extortion," and therefore does not create an unwaivable conflict of interest). Moreover, Petitioner's submissions to this Court confirm that the government's investigation of Roth commenced *prior to* Petitioner's trial and did not involve Petitioner's case. *See* Postell Decl., Ex. A ¶ 5; Reply Mem. L., Ex. A (noting that Roth learned that he was the subject of a federal investigation five days before Petitioner's trial commenced); *see also id.*, Ex. B (Press release regarding Roth's conviction for witness tampering and obstruction of justice "in the federal narcotics cases of . . . clients Timothy 'Big Tim' Cherry and Raymond 'Ray Love' Bryant"). Accordingly, the Court finds that the investigation of

Petitioner's counsel for obstruction of justice and witness tampering at the time of Petitioner's trial on murder and weapons charges by an office different than the one prosecuting Petitioner does not rise to the level of an actual conflict.

The Court notes that its finding that Roth was not burdened by an actual conflict of interest does not disturb Petitioner's ineffective assistance claim based upon certain predicate allegations, including Roth's alleged failure to call certain witnesses. As Judge Smith explained in the February Order, "[a]lleged conflicts that are neither 'per se' nor 'actual' are commonly labeled 'potential,' and are analyzed according to the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), for claims of ineffective assistance of counsel." February Order at 7 (quoting *Beatty*, 142 F. Supp. 2d at 459) (internal brackets omitted). Thus, to the extent that Petitioner alleges that Roth's failure to call particular witnesses was due to a potential conflict of interest, that claim will be analyzed under the *Strickland* analysis for ineffective assistance claims based on the papers that have been submitted by the parties. *See id.*

### b. The Trial Court's Inquiry Obligation

Petitioner asks this Court to hold an evidentiary hearing on the issue of the trial court's knowledge of Roth's potential conflict of interest. In the April Opinion, this Court held that there was no factual basis for Petitioner's claim that the trial court failed to satisfy its "inquiry obligation" in light of the admission in Petitioner's motion to amend that "[t]he record below does not reveal whether the court or respondent knew of trial counsel's problem." April Opinion at 5 n.4. In the motion for reconsideration, Petitioner now objects to the Court's finding and submits purported evidentiary support for his contention that both the trial court and Respondent were aware of Roth's potential conflict.

A trial court has an "obligation to inquire into the facts and circumstances of an attorney's interests either in response to a timely conflict of interest objection, or 'when it knows or reasonably should know of the possibility of a conflict of interest.'" *LoCascio v. United States*, 395 F.3d 51, 56 n.2 (2d Cir. 2005) (citations omitted); *see also Cuyler v. Sullivan*, 446 U.S. 335, 346-47 (1980) (holding that absent a timely objection, a trial court "need not initiate an inquiry" unless it "knows or reasonably should know that a particular conflict exists"). Until the Supreme Court's decision in *Mickens v. Taylor*, 535 U.S. 162 (2002), the Second Circuit had generally held that a trial court's failure to conduct an initial inquiry warranted an automatic vacatur of the conviction and a new trial. *United States v. Blount*, 291 F.3d 201, 211 (2d Cir. 2002) (citing cases). In *Mickens*, however, the Supreme Court held that the trial court's failure to inquire into a potential conflict of interest on the part of the defendant's attorney, about which the court knew or reasonably should have known, does not automatically require reversal of the conviction, for "[t]he trial judge's failure to inquire into a suspected conflict is not the kind of error requiring a presumption of prejudice." *Id.* at 211-12 (quoting *Mickens*, 535 U.S. at 176 (Kenndy, J., concurring)). In the absence of any suggestion by counsel that he cannot fulfill his duties to all of his clients,

> the trial court's failure to make the . . . inquiry does not reduce the [defendant's] burden of proof; it [i]s at least necessary, to void the conviction, for [the defendant] to establish that the conflict of interest adversely affected his counsel's performance.

*Id.* at 212 (quoting *Mickens*, 535 U.S. at 173-74) (majority opinion)). Accordingly, under *Mickens*, absent objection, a "trial court's failure to conduct an inquiry to determine whether the defendant is aware of a possible conflict of interest does not by itself result in a constitutional violation requiring automatic reversal of the conviction. Rather . . . a defendant still must

10

establish that the conflict adversely affected counsel's performance to obtain reversal of his conviction." *Wright v. Smith,* No. 03 Civ. 806, 2007 WL 2412248, at *8 (N.D.N.Y. Aug. 21, 2007) (citing *Mickens*, 535 U.S. at 173-74), *aff'd,* 348 F. App'x. 612 (2d Cir. 2009).

Petitioner admits that he did not object to his counsel's potential conflict of interest or otherwise request that the trial court inquire into the issue. *See* Reply Mem. L. 8. Accordingly, even if the trial court knew or reasonably should have known of Roth's potential conflict of interest, the Supreme Court has made clear that automatic reversal is not required. Rather, Petitioner must still prove prejudice to prevail on his ineffective assistance claim. It is therefore unnecessary to hold an evidentiary hearing regarding the trial court's knowledge of the ongoing investigation into Petitioner's trial counsel. *See United States v. Khan,* 328 F. App'x 704, 707-08 (2d Cir. 2009) (noting that the trial court's failure to inquire into a potential conflict does not require automatic reversal of the conviction, and holding that to prevail on the claim that defendant's counsel had a potential conflict of interest, defendant must still prove prejudice). Accordingly, as potential conflict of interest claims are analyzed under the *Strickland* standard, which requires a showing of prejudice, and as Petitioner states a claim for ineffective assistance of counsel in his original Petition, there is no need to either amend the Petition to include Petitioner's proposed new claim or to hold an evidentiary hearing on the issue.[5]

---

[5] Even if Petitioner was entitled to automatic reversal of his conviction upon a showing that the trial court knew of Roth's potential conflict and failed to make the appropriate inquiry, the Court would nevertheless deny Petitioner's request for an evidentiary hearing, as he has failed to make a substantial showing that the trial court was aware of a possible conflict of interest at the time of trial. *See Armienti*, 234 F.3d at 824-25. The exhibits attached to Petitioner's submissions to the Court do not suggest that the trial court was aware of trial counsel's potential conflict. To the contrary, an attorney affidavit from a prior proceeding attached to Petitioner's instant motion states that "[t]he record being devoid of any reference to th[e] issue appears to support Mr. Postell's belief that the court, with an obligation to protect Mr. Postell's rights by ascertaining the extent of Mr. Roth's problems and apprising Mr. Postell of the conflict and his rights to unconflicted counsel, *was not made aware of the situation.*" Postell Decl., Ex. A ¶ 9 (emphasis added); *see also id.* ¶ 11 ("Whether St. John's arrest was known to the prosecutor or the court is unknown."). Moreover, although Petitioner contends that St. John's arrest was reported in the news and was commonly known among the legal community, his submissions to the Court concede that St. John's arrest "was in the public domain, *albeit, not locally.*" *Id.* ¶ 11 (emphasis added). Finally, with respect to the investigation of Roth,

11

### III. Conclusion

For the reasons set forth above, Petitioner's motion for reconsideration is DENIED. The Clerk of the Court is respectfully directed to terminate the motion (Doc. 25).

It is SO ORDERED.

Dated: November 13, 2013
      New York, New York

                                                                                 Edgardo Ramos, U.S.D.J.

---

Petitioner's claim that the trial court was aware of the investigation is based upon pure conjecture, as he has failed to set forth any factual allegations from which the inference can be drawn that the investigation was a matter of public knowledge or one that the trial court was necessarily aware of.