UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RODNEY POSTELL,

                        Petitioner,

     – against –

MARK BRADT, SUPERINTENDENT,
ELMIRA CORRECTIONAL FACILITY,

                        Respondent.

**OPINION AND ORDER**

09 Civ. 4853 (ER) (LMS)

---

Ramos, D.J.:

    Petitioner Rodney Postell ("Postell" or "Petitioner"), through his counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition") on May 22, 2009. Doc. 1. The Honorable Kenneth M. Karas, to whom this case was previously assigned, referred the Petition to Magistrate Judge Lisa M. Smith on October 5, 2009. Doc. 3. The case was reassigned to the undersigned on January 6, 2012. Doc. 11.

    On June 9, 2015, Magistrate Judge Smith issued a Report and Recommendation ("Report" or "R. & R."), recommending that the Petition be dismissed, or in the alternative, denied as without merit. Doc. 33. Petitioner, acting *pro se*, filed a written objection to the Report on July 31, 2015.[1] Doc. 36 ("Objection"). For the reasons stated herein, the Court adopts the R. & R. in its entirety, and the Petition is DENIED.

---

[1] By Order dated June 29, 2015, the Court extended the deadline for Postell's written objection to July 27, 2015. Doc. 35. Although the Court did not receive the Objection until July 31, 2015, the declaration of service was dated July 26, 2015, and thus, the Objection was timely filed. *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (finding that a *pro se* prisoner's complaint is deemed filed on the date the prisoner turns his complaint over to prison officials).

**I. BACKGROUND**

The factual background and procedural history relevant to the Petition are set forth in Magistrate Judge Smith's Report, familiarity with which is assumed. *See* R. & R. at 3-7.

On March 19, 2002, a grand jury charged Postell with various crimes in connection with two shots fired on November 26, 2001—one which struck an occupied house and another which struck Quentin Pollard ("Pollard") in the left leg. Pet. at 1-2; Resp't's Aff. at 3; Resp't's Opp. Ex. 4 at 2. A jury trial began in the Supreme Court of the State of New York, Westchester County ("Westchester County Court") on December 4, 2002. Resp't's Aff. at 5. At trial, Postell's trial counsel, Donald Roth Jr., presented two witnesses: Crystal Kennie ("Kennie") and Corey Vandiver ("Vandiver").[2] Resp't's Opp. Ex. 4 at 2, 7. Postell was convicted on December 12, 2002 of one count of assault in the first degree and one count of reckless endangerment in the first degree. Pet. at 2; Resp't's Aff. at 7-8. He was sentenced to a determinate term of incarceration of twenty-five years and five years post-release supervision on the assault charge, and an indeterminate term of incarceration of three and one-half to seven years on the reckless endangerment charge, to be served consecutively. Pet. at 2; Resp't's Aff. at 8-9.

Prior to filing his direct appeal, Petitioner made two motions pursuant to New York Criminal Procedural Law §§ 440.10 and 440.20, respectively, through his new counsel, Anthony Giordano, alleging that he was denied effective assistance of counsel due to trial counsel's conflict of interest, and that the imposition of consecutive sentences was improper. *See* Resp't's Opp. Ex. 3. On May 11, 2006, the Westchester County Court denied these motions. *See*

---

[2] Kennie was romantically involved with Pollard from 1995 through 1997 and thereafter was romantically involved with Postell from 1998 through 2002. Resp't's Opp. Ex. 4 at 7-8. She testified, *inter alia*, that Pollard requested $10,000 in exchange for not testifying at trial. *Id.* at 8. Vandiver testified that he ran over to the scene before the police arrived, at which time Pollard stated that he did not know the perpetrator. *Id.* at 9. However, after Pollard was taken to the hospital, Pollard identified Postell, whom he had known for five years, as the shooter. *Id.* at 3, 5 n.3. Vandiver further testified that Pollard was armed during the shooting, and that Pollard's gun was taken by an individual known in the community as "Itch." *Id.* at 9.

2

Resp't's Opp. Ex. 6.  Petitioner's request for leave to appeal was denied by the Second Department of the Appellate Division on June 28, 2006.  Resp't's Opp. Ex. 7.

Petitioner filed his direct appeal on November 27, 2006, again alleging, *inter alia*, ineffective assistance of counsel because trial counsel had a "material conflict," and that there was an unlawful imposition of consecutive sentences.  Resp't's Opp. Ex. 8 at 52-59, 65-74.  On May 29, 2007, Petitioner filed a supplemental brief *pro se* in support of the direct appeal, asserting that:  (1) the jury charge was improper and violated Petitioner's right to due process, (2) trial counsel was ineffective on bases not raised in the Petition, and (3) Petitioner's sentence was unlawful and unconstitutional.  *See* Resp't's Opp. Ex. 10.  On November 7, 2007, the Second Department unanimously affirmed Petitioner's conviction.  *People v. Postell*, 45 A.D.3d 609, 845 N.Y.S.2d 397 (2d Dep't 2007).  Petitioner sought leave to appeal the Second Department's decision through counsel on December 26, 2007, and *pro se* on December 27, 2007.  Resp't's Opp. Ex. 13 at 13-16.  Both applications were denied by the New York Court of Appeals on February 21, 2008.  *Id.* at 1.

Prior to filing this Petition, Petitioner filed a second § 440.10 motion, acting *pro se*, claiming ineffective assistance of trial counsel because counsel sought to suborn perjury from a potential witness.  *See* Resp't's Opp. Ex. 14.  The Westchester County Court denied this motion on October 17, 2008, and Petitioner's application for leave to appeal was denied on January 8, 2009 by the Second Department.  Resp't's Opp. Ex. 17 at 1-8.

On May 22, 2009, Petitioner filed the instant Petition, claiming that:  (1) he was denied effective assistance of counsel because trial counsel had not presented two witnesses at trial and failed to timely serve an alibi notice for Kennie; (2) he was unlawfully sentenced to two

consecutive terms of incarceration; and (3) the jury instructions regarding the charge of assault in the first degree were incorrect and deprived Petitioner of a fair trial.  Pet. at 9-15.

On June 9, 2015, Magistrate Judge Smith issued the Report, concluding that: (1) Petitioner has not exhausted the ineffective counsel claim; (2) trial counsel's decision not to call the two witnesses was strategic; (3) the claim that trial counsel was ineffective because he failed to timely serve an alibi notice for Kennie should be dismissed for procedural default; (4) Petitioner's improper consecutive terms of incarceration claim is inappropriate for habeas review because it challenges state court's application of state law; (5) the claim of improper imposition of consecutive terms further fails under both federal and state law; (6) the improper jury instruction claim should be dismissed for procedural default; and (7) the improper jury instructions claim alternatively fails because Petitioner has failed to show that the instructions, which are effectively recitations of state law with slight semantic variations, are erroneous. R. & R. at 13-26.

## II.  STANDARD OF REVIEW

### A.  AEDPA Review of the State Court Proceedings

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214, habeas petitions under 28 U.S.C. § 2254 may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (d)(2).  This deference is required under the AEDPA if the petitioner's claim "was adjudicated on the merits in State court proceedings."  28 U.S.C. § 2254(d); *see Bell v. Miller*, 500 F.3d 149, 154–55 (2d Cir. 2007).

"Th[e] statutory phrase ['clearly established Federal law, as determined by the Supreme Court of the United States,'] refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). In order for a federal court to find that the state court's application of Supreme Court precedent was unreasonable, the decision must be objectively unreasonable rather than simply incorrect or erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The factual findings made by state courts are presumed to be correct under the second prong of the AEDPA, and petitioner has the burden to rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Nelson v. Walker*, 121 F.3d 828, 833 n.4 (2d Cir. 1997).

### B. Review of the Magistrate Judge's Report

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Parties may raise "written" objections to the report and recommendation "[w]ithin fourteen days after being served with a copy." *Id.*; Fed. R. Civ. P. 72(b)(2). A district court reviews *de novo* those portions of the report and recommendation to which timely and specific objections are made. 28 U.S.C. § 636(b)(1)(C); *see also United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38 (2d Cir. 1997). The district court may adopt those parts of the report and recommendation to which no party has timely objected, provided no clear error is apparent from the face of the record. *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008) (citations omitted). The district court will also review the report and recommendation for clear error where a party's objections are "merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition." *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (citations and

internal quotation marks omitted); *see also Genao v. United States*, No. 08 Civ. 9313 (RO), 2011 WL 924202, at *1 (S.D.N.Y. Mar. 16, 2011) ("In the event a party's objections are conclusory or general, or simply reiterate original arguments, the district court reviews the [R. & R.] for clear error.").

### III. PETITIONER'S OBJECTION

Petitioner, acting *pro se*, only objects to Magistrate Judge Smith's finding that the jury instructions were not erroneous. *See* Obj. Specifically, Petitioner claims that the jury instruction for the definition of "serious physical injury" was erroneous because it contained elements of lesser gravity than that required in New York Penal Law Section 10.00. *Id.* at 3.

Petitioner did not raise any objections to the Report regarding claims that the Petitioner was denied effective counsel, and that he was improperly sentenced to two consecutive incarceration terms. After carefully reviewing those portions of the Report, the Court finds no error, clear or otherwise. Accordingly, the Court adopts Magistrate Judge Smith's recommendation to deny those claims for the reasons stated in the Report. *See* R. & R. at 13-24.

**A. Improper Jury Instruction Claim**

At trial, the jury was given a definition of "serious physical injury," a term that was used in defining assault in the first degree. The jury instruction stated, "Serious physical injury means *impairment of a person's physical condition* which creates a substantial risk of death or which causes death or serious or protracted disfigurement or protracted impairment of health or protracted loss or impairment of the function of any bodily organ." T: 1050 (emphasis added). New York Penal law Section 10.00 defines serious physical injury as "*physical injury* which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily

6

organ." N.Y. Penal Law § 10.00(10) (emphasis added).  Petitioner claims that the phrase "impairment of a person's physical condition" is the definition for "physical injury," and should not have been used to define "serious physical injury."  Obj. at 4; *see* N.Y. Penal Law § 10.00(9) (defining physical injury as "impairment of physical condition or substantial pain").  Magistrate Judge Smith was unable to address this argument as Petitioner raises it for the first time in his Objection.  Although he asserted in his Petition that the definition of "serious physical injury" given at trial was improper, he made that claim on different grounds.

The Second Circuit has not indicated whether a district court must consider a new legal argument raised for the first time in an objection to a report and recommendation.  *See Machicote v. Ercole*, No. 06 Civ. 13320 (DAB) (JCF), 2011 WL 3809920, at *6 (S.D.N.Y. Aug. 25, 2011).  The weight of authority in this district indicates that the Court cannot review new legal arguments.  *See, e.g.*, *Read v. Thompson*, No. 13 Civ. 6962 (KMK) (PED), 2016 WL 165716, at *11 (S.D.N.Y. Jan. 13, 2016) (noting that the Court may not consider claims raised for the first time in a petitioner's objections); *Davis v. Herbert*, No. 00 Civ. 6691 (RJS) (DFE), 2008 WL 495316, at *1 (S.D.N.Y. Feb. 25, 2008) ("[U]pon review of a habeas petitioner's objections to a magistrate judge's report and recommendation, the Court may not consider claims raised for the first time in the petitioner's objections.") (collecting cases).  Further, the Second Circuit has held that a district court does not abuse its discretion by refusing to consider new evidence submitted on objection.  *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir.1994).  Some of our sister courts in this Circuit, however, have suggested that district courts have discretion to consider, or decline to consider, legal arguments raised for the first time through objections.  *See, e.g.*, *Machicote*, 2011 WL 3809920, at *6–7; *Wells Fargo Bank N.A. v. Sinnott*, No. 07 Civ. 169 (CR), 2010 WL 297830, at *2 (D. Vt. Jan. 19, 2010).

Even if the Court were to consider this new argument, it is not cognizable on habeas review.  Before the Court can consider an argument on habeas, all state remedies must be exhausted.  28 U.S.C. § 2254(b)(1)(A); *see Richardson v. Superintendent of Mid-Orange Corr. Facility*, 621 F.3d 196, 201 (2d Cir. 2010) (exhaustion requires the prisoner to "fairly present" his claim "in each appropriate state court (including a state supreme court with powers of discretionary review).") (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)).  This is the first time Petitioner has argued that the jury instruction defining "serious physical injury" was not proper because, instead of the term "physical injury" that New York Penal law Section 10.00(10) uses, the trial court used the phrase "impairment of a person's physical condition."  Thus, he has not "fairly raised" this claim in state court, and it is unexhausted.  *See e.g., Jackson v. Conway*, 763 F.3d 115, 143 (2d Cir. 2014) (because petitioner presented a new example of prosecutorial misconduct on habeas that he had not raised in state court, that portion of the prosecutorial misconduct claim was unexhausted).

Furthermore, because the claim arises out of a jury instruction, which is part of the record, it is a record-based claim that Petitioner could have raised on his direct appeal; he is not entitled to a second.  *See Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006).  Petitioner is also procedurally barred from seeking relief through a Section 440.10 motion because that motion is not available for claims that could have been raised on direct appeal, unless there was a justifiable failure.  N.Y. Crim. Proc. Law § 440.10(2)(c).  He has not alleged that his failure was justifiable.  Because Petitioner has no further state court remedies, this claim is "deemed exhausted" and "procedurally defaulted."  *See Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001).  This Court cannot reach the merits of a procedurally defaulted claim unless Petitioner can show

cause and prejudice for the default, or that failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).

Petitioner has not attempted to show that there was cause and prejudice for the default, or that failure to consider the claim will result in a fundamental miscarriage of justice. In fact, failure to consider the claim will not result in a fundamental miscarriage of justice because Petitioner has failed to satisfy the "especially heavy" burden to prove that the jury instruction quoting state statute contains a constitutional error. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). An error in a jury instruction will only be a *constitutional* error if the instruction was both "ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Id.* at 190-91. The only difference between the jury instruction and New York Penal Law Section 10.00(10) is that the trial court replaced the term "physical injury" with its statutory definition, which Petitioner argues was improper. Proving physical injury is necessary to prove serious physical injury. *People v. Pittman*, 33 A.D.3d 1118, 1120, 823 N.Y.S.2d 256 (2006) ("There can be no doubt that it is impossible to cause serious physical injury without concomitantly causing physical injury"). Thus, describing physical injury in the jury instruction did not make the charge more ambiguous or relieve the State of its burden to prove every element of the crime beyond a reasonable doubt. Instead, the jury instruction clarified a necessary component of what constitutes "serious physical injury." Petitioner would not have succeeded in his claim even if it was not procedurally defaulted, and thus, there cannot be any manifest injustice in not considering the claim.

Petitioner also argues that the jury charge improperly suggested that he could be found guilty of the crimes of assault in the first and second degree if the evidence demonstrated that he

created substantial risk of protracted disfigurement or protracted impairment of health. Obj. at 4. This is an attempt to engage this Court in rehashing an argument that was presented to, and considered by, Magistrate Judge Smith. *See* R. & R. at 27-28. Therefore, this objection does not warrant *de novo* review of the Report but rather is reviewed for clear error. *See Genao*, 2011 WL 924202, at *1 ("In the event a party's objections are conclusory or general, or simply reiterate original arguments, the district court reviews the [R. & R.] for clear error."); *Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009). After carefully reviewing Petitioner's argument and the Report, the Court finds no error, clear or otherwise. Accordingly, the Court adopts the Report's recommendation that this claim be dismissed for the reasons stated therein. R. & R. at 23-34.

## IV. CONCLUSION

For the reasons set forth above, the Court adopts Magistrate Judge Smith's Report in its entirety and Postell's petition for a writ of habeas corpus is DENIED. As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *see also, e.g., Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012). The Clerk of Court is respectfully directed to close this case.

It is SO ORDERED.

Dated:  March 31, 2017
        New York, New York

_____
Edgardo Ramos, U.S.D.J.